UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRUCE ZIELINSKI,          )
                                )
           Petitioner,     )     Case No. 1:03-cv-271
                                )
v.                             )     Honorable David W. McKeague
                                )
SALLY LANGLEY,          )
                                )     **REPORT AND RECOMMENDATION**
           Respondent.   )
_____)

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of seven to twenty years, imposed by the Grand Traverse County Circuit Court on September 17, 1999, after a jury convicted Petitioner of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89. In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

    I.     THE PROSECUTION DID NOT DISCLOSE EVIDENCE THAT MY CRIME WAS AN "ATTEMPT" CRIME AND NOT AN "INTENT" CRIME.

    II.    DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.

    III.   DENIAL OF EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

    IV.   DENIAL OF TIMELY APPEAL.

Respondent has filed an answer to the petition (docket #24) stating that the grounds should be denied because they either without merit or are procedurally defaulted. Upon review and applying the AEDPA standards, I recommend that the petition be denied for lack of merit.

**Procedural History**

### A.  Trial Court Proceedings

The state prosecution arose from an incident that occurred on May 8, 1999, when Petitioner entered a business office, confronted an employee with a kitchen knife, and demanded money.  Petitioner was charged with one count of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89.  Following a preliminary examination on May 20, 1999, he was bound over on the charge.  (Docket #32.)  A supplemental information was filed charging petitioner as a habitual offender, third offense, MICH. COMP. LAWS § 769.11.  (Docket # 30.)

According to the preliminary examination testimony of the victim, Marcia Talicska, Petitioner entered the office of the Island View Apartments in Traverse City at approximately 4:00 p.m. on May 8, 1999.  At the time Petitioner arrived, Talicska was on the telephone with her boyfriend's ex-wife.  (Prelim. Tr., 4, 8-9.)  While she was on the telephone, Petitioner petted the resident cat.  (Prelim. Tr., 4)  After hanging up the phone, Talicska asked Petitioner if she could help him.  Petitioner grabbed the front of Talicska's shirt, pulled her close to him, and demanded, "Give me all the money."  (Prelim. Tr., 4.)  In his other hand, Petitioner held up a six-inch serrated knife. (Prelim. Tr., 5.)  Both Petitioner's face and the knife were held within twelve inches of Talicska's face.  (Prelim. Tr., 5.)

Talicska told Petitioner that the business did not keep any money in the office and that they did most of their business by credit card.  Petitioner eventually let go of Talicska's shirt and left the office.  (Prelim. Tr., 6.)  Talicska described what Petitioner was wearing and identified him in court.  (Prelim. Tr., 6, 9-11.)  She previously had identified Petitioner from a photo array presented by the police.  (Prelim. Tr., 11.)  She acknowledged that Petitioner was wearing sunglasses and a

hat at the time of the incident, so she only was able to see the lower part of his face unobstructed, but she was confident of her identification.  (Prelim. Tr., 10-11.)  Talicska testified that when Petitioner left the office, she followed him to the door in order to lock it before calling the police. (Prelim. Tr., 13.)  She saw Petitioner walk quickly away from the office toward the beach.  (Prelim. Tr., 14.)

On August 6, 1999, Petitioner pleaded guilty to the charge of assault with intent to rob while armed in exchange for dismissal of the habitual offender charge.  (Plea Tr., docket #33.) On September 17, 1999, Petitioner was sentenced to serve a term of seven to twenty years. (Sentencing Transcript, ("S. Tr."), 12, docket #34.)

### B.  Direct Appeal

The trial court assigned appellate counsel to Petitioner on October 21, 1999. Assigned counsel moved to withdraw and new counsel was appointed on December 1, 1999. Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals on July 5, 2000.  His brief raised two issues regarding his sentence, neither of which originally was raised in this application for habeas corpus relief:[1]

I.    WAS THE SENTENCE IMPOSED NOT PROPORTIONATE TO THE CRIME COMMITTED?

II.   WAS THE SENTENCE IMPOSED BY THE TRIAL COURT SO DISPARATE THAT IT AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT AND IS THEREBY VIOLATIVE OF THE UNITED STATES AND THE MICHIGAN CONSTITUTIONS?

---

[1]On January 26, 2004, Petitioner sought leave to amend his petition.  The motion was denied on March 19, 2004, because it essentially constituted a reply to Respondent's answer, while not attempting to add a new issue.  Upon further reflection, it appears that Petitioner may have intended to add the claims raised by counsel on direct appeal.  In addition, on May 17, 2004, Petitioner renewed his motion to amend, making more explicit his intent to add the sentencing claims (docket #43).  Because those claims were exhausted in the state courts, the motion to amend the petition is granted and the Court will address the claims on habeas review.

- 3 -

(Def.-Appellant's Br. on Appeal, docket #35.)  By unpublished order issued on September 12, 2000, the Michigan Court of Appeals denied the application for lack of merit.  (See 9/12/00 Mich. Ct. App. Order ("MCOA Ord."), docket #35.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals.  He also raised four new issues: (1) denial of due process by the late appointment of counsel; (2) ineffective assistance of counsel in waiting seven months to file delayed application for leave to appeal; (3) denial of due process when counsel did not advise Petitioner of the existence of a lesser included offense; and (4) voluntary abandonment.  By order entered February 6, 2001, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (See Mich. Ord., docket #36.)

### C. Post-conviction relief

On April 27, 2001, Petitioner filed a motion for relief from judgment in the Grand Traverse County Circuit Court.  In his motion, Petitioner raised six grounds for relief: (1) the prosecutor failed to demonstrate that Petitioner possessed the requisite specific intent to rob; (2) Petitioner was incapable of formulating the intent to rob due to his intoxication; (3) ineffective assistance of defense counsel; (4) a promise of leniency by defense counsel; (5) ineffective assistance of appellate counsel; and (6) untimely appointment of counsel.  On October 23, 2001, the circuit court denied the motion on the basis of MICH. CT. R. 6.508(D)(3).

Petitioner sought leave to appeal to the Michigan Court of Appeals, raising two grounds: (1) ineffective assistance of assigned counsel; and (2) ineffective assistance of appellate counsel.  The court of appeals denied leave to appeal for lack of merit in the grounds presented.

Petitioner sought leave to appeal to the Michigan Supreme Court, which denied leave on January 31, 2003, on the ground that Petitioner had failed to establish entitlement to relief under MICH. CT. R. 6.508(D).

Petitioner filed the instant petition on April 22, 2003.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 ("AEDPA"). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is

- 5 -

"limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the fact of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.), *cert. denied*, 124 S. Ct. 535 (2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered

the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.[2]

---

[2]Petitioner's first ground for habeas relief was raised for the first time in his application for leave to appeal to the Michigan Supreme Court, which denied leave to appeal. The remaining grounds were raised for the first time in Petitioner's motion for relief from judgment, and the first ground was renewed in that motion. The Michigan courts rejected all of Petitioner's claims on the basis that Petitioner had failed to demonstrate entitlement to relief under MICH. CT. R. 6.508(D). (See 10/23/01 Grand Traverse Cir. Ct. Ord., 7/31/02 MCOA Ord., 1/21/03 MSC Ord; docket # 37.) When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002), *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim "will result in a fundamental miscarriage of justice." *Hicks*, 377 F.3d at 551-52; *see Murray v. Carrier*, 477 U.S. 478, 495 (1986)) (specifying that a 'fundamental miscarriage of justice' will result "where a constitutional violation has probably resulted in the conviction of one who was actually innocent."). In cases where the Michigan Court of Appeals and Michigan Supreme Court have denied leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," it is sufficiently clear that the supreme court intended to invoke a procedural bar. *See Munson v. Kapture*, ___ F.3d ___, 2004 WL 2084235, at ** 3-4 (6th Cir. Sept. 20, 2004); *Abela v. Martin (Abela II)*, 380 F.3d 915, 922-23 (6th Cir. 2004); *see also Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004); *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). As a result, all of Petitioner's habeas claims appear to be procedurally defaulted and may be considered

## Discussion

I.      Failure of Prosecutor to Prove "Intent" Rather than "Attempt"

In his first ground for habeas relief, Petitioner argues that the prosecutor failed to reveal to Petitioner that his offense did not meet the requirements of the crime of assault with intent to rob while armed, an offense punishable by any term up to life imprisonment, but more appropriately was considered attempted armed robbery, an offense punishable by a maximum of five years. *Compare* MICH. COMP. LAWS § 750.89 (assault with intent to rob while armed), *with* MICH. COMP. LAWS § 750.529 (armed robbery, punishable by up to life imprisonment) *and* MICH. COMP. LAWS § 750.92(2) (attempt of offense punishable by life term is punishable by not more than five years).

Although Petitioner's claim is conclusory in his petition, Petitioner refers the Court to the argument contained in his application for leave to appeal the denial of his motion for relief from judgment. There, Petitioner argues that he did not either employ force and violence or commit acts that put the victim in fear that such force would be used. As evidence of his claim, he notes that the victim asked him at one point, "Is this a joke?," thereby demonstrating that she was not truly afraid. Petitioner argues that, because the victim was not truly afraid, the evidence could not show assault, but only an attempt to commit armed robbery.

---

only if Petitioner can demonstrate cause excusing the default and actual prejudice resulting from the claimed violation. However, where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grds*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Because Petitioner's claims include the ineffective assistance of appellate counsel, and because the ineffective assistance of appellate counsel may itself constitute cause excusing a default, *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell*, 274 F.3d at 349; *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), the question whether Petitioner is barred by procedural default is complex. In contrast, the merits of Petitioner's claims are relatively simple. As a result, for purposes of this report and recommendation, I assume Petitioner is not barred by procedural default.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The only means available for challenging his conviction is to claim that his plea is invalid, *i.e.*, it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it generally has been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31; *see also United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d

1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

As a result, even accepting as true Petitioner's claim that the prosecution failed to demonstrate an adequate factual basis to prove assault, such a claim would fail to implicate a constitutional right. *See Alford*, 400 U.S. at 31; *Tunning*, 69 F.3d at 111.  The state court's denial of Petitioner's claim for lack of merit, therefore, undoubtedly constituted a reasonable application of clearly established Supreme Court precedent.[3]

Moreover, however, the plea colloquy clearly demonstrates a sufficient factual basis for the offense.  The elements of assault with intent to rob while armed are assault with force and violence, intent to rob or steal, and defendant's being armed.  *People v Akins,* 259 Mich. App. 545, 554 (2003), quoting *People v Cotton,* 191 Mich. App. 377, 391, appeal denied 439 Mich. App. 932 (1992).  Putting in fear is not an element of offense of assault with intent to rob while armed.  *People v Williams,* 57 Mich. App. 612 (1975).

THE COURT:  What  happened next?

DEFENDANT ZIELINSKI:  She hung up the phone some minutes thereafter, at that point I asked for the money, she said we don't have any.  And then I withdrew a knife from my pocket, grabbed her shirt and said give me the money, she said we don't have any.  And at that point, I up and left and walked away from the scene.

THE COURT:  You demanded money, correct?

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  She said they didn't have any?

---

[3]As previously noted, where the state court has not articulated its reasons, but where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*.  *Onifer*, 255 F.3d at 316.  Here, the state court denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented."  (9/12/00 MCOA Ord.)  Because the court of appeals expressly stated that it considered Petitioner's claims on the merits, the court's determination is entitled to deference on habeas review.  *Onifer*, 255 F.3d at 316; *Harris*, 212 F.3d at 943.

DEFENDANT ZIELINSKI:  Correct, sir.

THE COURT:  I would gather you grabbed her by the shirt?

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  And then you produced a knife?

DEFENDANT ZIELINSKI:  Somewhere in – right about the same time, yeah.

THE COURT:  The knife had been in your pocket or where?

DEFENDANT ZIELINSKI:  Yes, sir, in my pocket.

THE COURT:  Jackknife or sheet knife?

DEFENDANT ZIELINSKI:  Regular serrated kitchen knife.

THE COURT:  Regular what?

DEFENDANT ZIELINSKI:  Serrated kitchen type knife.

THE COURT:  You produced it, held it up and showed it to her?

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  Did she reasonably think that was being demonstrated to her for a purpose?

DEFENDANT ZIELINSKI:  I'm sorry?

THE COURT:  Did she think you were showing her the knife in order to get the money?

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  At that point you let go of her and walked out?

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  When you did all this it was your intent to get money from her?

- 11 -

DEFENDANT ZIELINSKI:  Yes, sir.

THE COURT:  I would like to ask counsel if the Court has complied with MCR 6.302, and have we established the elements of the offense?

MR. COONEY:  Yes, your Honor.

MR. SETTLES:  Yes, Judge.

THE COURT:  Mr. Zielinski, how to you wish to plead to assault with intent to rob while armed?

DEFENDANT ZIELINSKI:  Guilty.

THE COURT: I find your plea is understanding, accurate and voluntary. . . .

(Plea Tr., 11-13.)  Petitioner admitted on the record all the facts necessary to prove the offense charged.   I recommend that Petitioner's first habeas claim be denied.

II.      Ineffective Assistance of Defense Counsel

Petitioner asserts that his appointed counsel was ineffective for a variety of reasons. First, he contends that counsel failed to advise him that a lesser included offense, attempted armed robbery, was available on the facts of the case.  Petitioner asserts that had he been aware of the possible lesser charge, he would have gone to trial or pleaded guilty to the lesser offense.  Second, Petitioner claims that counsel improperly assured him, "Don't worry, this is a lower-end guideline judge."  Petitioner argues that the representation constituted a promise of leniency upon which he relied in pleading guilty.

In *Strickland v. Washington*, 466 U.S. 668, 687-88  (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

- 12 -

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Both prongs of the *Strickland* test involve mixed questions of law and fact. *Id.* at 698. In a guilty plea context, while the performance prong of the *Strickland* test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003); *Ohara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994); *Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir. 1992).

A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he is aware of the maximum and minimum (if any) that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

Petitioner does not allege that he was unaware of the nature of the charges or the direct consequences of the plea.  Petitioner has not cited, nor is this Court aware of, any clearly established Supreme Court authority requiring that, in order for his plea to be considered voluntary, a Petitioner be informed of all of the potential defenses to the charges or be informed of all lesser included offenses of which he could have been charged or could be found guilty if he went to trial.

Moreover, no evidence exists that Petitioner was offered a plea agreement under which he would plead guilty to the lesser included offense of attempted armed robbery.  As a consequence, counsel could not have been ineffective for failing to advise Petitioner of his right to plead to that offense.

Further, with respect to his claim that counsel improperly promised him leniency, Petitioner's claim, by his own admission, is meritless.  In his application for leave to appeal to the Michigan Court of Appeals, Petitioner expressly "state[d] that the word 'promise' was never used." (Docket # 37, MCOA Br. at 6.)  As a factual matter, a claim that counsel, providing his honest assessment, told Petitioner that the sentencing judge was a lower-guidelines judge is simply not equivalent to a promise upon which any reasonable person would have relied.

Further, during the plea colloquy, Petitioner expressly denied having been made promises or having been induced in any way to plead guilty.  (Plea Tr., 9.)  He also acknowledged that he understood that he was giving up his right to claim that promises or inducements had been made to him.  (Plea Tr., 9.) Although a guilty plea must be voluntary, "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." Id. at 756. A defendant's statements on the record during a plea colloquy that he or she understands the nature

- 14 -

and the consequences of the plea provide strong evidence that a plea was intelligent and knowing. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Courts generally are wary of a defendant's after-the-fact claims that he subjectively believed the plea agreement to be different. "If we were to rely on [the defendant]'s alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

In sum, Petitioner has failed to demonstrate that the state court unreasonably rejected his claim of ineffective assistance of trial counsel.

### III.    Ineffective Assistance of Appellate Counsel

In his last two grounds for habeas relief, Petitioner challenges the effectiveness of appellate counsel. In ground three of his petition, Petitioner asserts that appellate counsel was ineffective for failing to raise the claims of ineffective assistance of trial counsel and sufficiency of the evidence to prove assault with intent to commit armed robbery, and for filing a "canned" brief omitting these grounds. In ground four, Petitioner asserts that appellate counsel was ineffective in failing to consult with Petitioner and failing to file the appeal until months after counsel was appointed.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on 'those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

- 15 -

To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

As determined above, neither issue Petitioner sought to have appellate counsel raise provided a constitutional basis for overturning a guilty plea.  As a consequence, the failure to raise the proposed issues on appeal does not demonstrate the ineffective assistance of counsel.  Further, the filing of a "canned" brief without consultation with Petitioner similarly does not constitute ineffective assistance of counsel because Petitioner cannot identify a deficiency in counsel's performance.  The state courts' rejection of Petitioner's claim of ineffective assistance of appellate counsel, therefore, was entirely reasonable.

Petitioner's fourth ground also is without merit.  Petitioner claims that appellate counsel failed to file a delayed application for leave to appeal until seven months after appointment. Petitioner asserts that, had counsel filed the application sooner, the court of appeals would have considered his claims more fully, rather than denying leave to appeal for lack of merit in the grounds presented.  However, having pled guilty, Petitioner was not entitled to an appeal of right. MICH. CT. R. 7.203(A)(1)(b). The availability of review by the state appeals court, therefore, was discretionary, regardless of when it was filed. MICH. CT. R. 7.205(D)(2).  As a consequence, filing a delayed application for leave to appeal did not itself waive any entitlement to review by the court.  Moreover,

the court of appeals did not deny the delayed application for leave to appeal on the grounds of timeliness.  The court of appeals actually considered the merits of the claims on appeal and denied them because they were without merit.  Petitioner has failed to demonstrate any prejudice to his appeal caused by the delay in filing, or that the Michigan Court of Appeals erred in determining that Petitioner's claim of ineffective assistance of appellate counsel was without merit.

IV.   Sentencing Issues

Petitioner argued on direct appeal in the state courts that his sentence was disproportionate to his offense under state law and that his sentence was so excessive and disproportionate as to constitute cruel and unusual punishment under both the Eighth Amendment of the United States Constitution and Article 1, Section 16 of the Michigan Constitution of 1963.

The first sentencing claim fails to set forth a federal constitutional issue cognizable on habeas review.  The court may entertain an application for habeas relief on behalf of a person in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Petitioner's first argument on appeal was based on the theory that the sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of the Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to

the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10.  It is

plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No.

94-2128, 1995 WL 236677, at * 2 (6th Cir. April 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258,

260 (E.D. Mich. 1994).  In addressing a claim that a sentence violated *Milbourn* proportionality, the

Sixth Circuit has stated that the issue was a matter of state law and that there was "no violation of

a constitutional right because the United States Constitution contains no strict proportionality

guarantee."  *Lunsford*, 1995 WL 236677, at *2 (citing *Harmelin v. Michigan*, 501 U.S. 957, 965

(1991) and *United States Hopper*, 941 F.2d 419, 422 (6th Cir. 1991)); *Terry v. Trippett*, No. 94-

2077, 1995 WL 469424, at *1 (6th Cir. Aug. 7, 1995) (same).  Thus, Petitioner's proportionality

claim is solely an issue of state law that is not cognizable in a habeas corpus action.[4]

        Petitioner's federal constitutional claim is without merit.  The United States

Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin*,

501 U.S. at 965; *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an

extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d

at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not

constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)

(quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Furthermore, "Federal courts

will not engage in a proportionality analysis except in cases where the penalty imposed is death or

life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir.

1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole.

---

[4]Petitioner's challenge to his sentence under the Michigan constitution similarly states only a claim under state
law that is not cognizable on habeas review.

Therefore, Petitioner's sentence does not run afoul of the Eighth Amendment's ban of cruel and unusual punishment.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Dated:  November 15, 2004                     /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).